UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MILTON ESPADA, ARTHUR KILL PROPERTIES,
LLC, and PLAZA BODY SHOP, INC.          Case No.: 23-cv-6186

                **Plaintiffs,**          <u>COMPLAINT</u>

       - against -

CITY OF NEW YORK, NEW YORK POLICE
DEPARTMENT CAPTAIN GLORISEL LEE, NEW
YORK POLICE DEPARTMENT LIEUTENANT
MIGUEL ESTEVEZ, NEW YORK POLICE
DEPARTMENT OFFICER DANIEL CENTER
(SHIELD NO. 29164), NEW YORK POLICE
DEPARTMENT OFFICER ROBERT CAMPBELL
(SHIELD NO. 27428), BREEN BROS. TOWING,
INC., JOSEPH BREEN, and DEALER DIRECT
SERVICES, INC.

                **Defendants.**
-------------------------------------------------------------------X

      Plaintiffs, Milton Espada (hereinafter "Espada"), Arthur Kill Properties, LLC (hereinafter

"AKP") and Plaza Body Shop, Inc. (hereinafter "Plaza") (hereinafter Espada, AKP and Plaza

collectively "Plaintiffs") by and through their attorneys, Milman Labuda Law Group, PLLC, as

and for their Complaint, allege as follows:

<u>PRELIMINARY STATEMENT</u>

      1.    This is an action based upon the New York City Police Department's (hereinafter

the "NYPD") unlawful arrest and imprisonment of Plaintiff Espada after Plaintiff Espada lawfully

removed certain vehicles that were illegally on the property owned and maintained by Plaintiff

AKP, the unauthorized use of AKP's property to store vehicles, and the unlawful taking of Plaza's

property.

1

2.      On or about August 8, 2023, the NYPD and Defendant New York Police Department Lieutenant Miguel Estevez (hereinafter "Lieutenant Estevez") illegally arrested and imprisoned Plaintiff Espada for removing vehicles that were stored on AKP's property without AKP's consent. Plaintiff AKP had authorized Plaintiff Espada, as an employee of Plaintiff Plaza, to tow vehicles off of Plaintiff AKP's property located at 4350 Arthur Kill Road, Staten Island, New York (hereinafter the "Property") that were not authorized by Plaintiff AKP to be placed on the Property.

3.      Despite being presented with documentation evidencing that the vehicles at issue were not authorized to be on AKP's property and that AKP had a right to remove those vehicles that were illegally stored on its property, the NYPD, Defendant Estevez, Defendant New York Police Department Captain Glorisel Lee (hereinafter "Captain Lee"), Officer Daniel Center (Shield No. 29164) (hereinafter "Officer Center") and Officer Robert Campbell (Shield No. 27428) (hereinafter "Officer Campbell") refused to release Plaintiff Espada from the illegal detention until the District Attorney declined to press charges against Plaintiff Espada due to lack of probable cause to arrest and imprison Plaintiff Espada for more than twenty-four (24) hours. Upon information and belief, Defendant Breen Bros. Towing Inc. (hereinafter "Breen Bros.") and Dealer Direct Services, Inc. (hereinafter "Dealer Direct") had an arrangement wherein Defendant Dealer Direct permitted Defendant Breen Bros. to use a portion of AKP's Property to store vehicles on AKP's Property, despite Defendant Dealer Direct having no right or authority to permit any entity to store vehicles on AKP's Property. There is no contract between AKP and any of the Defendants to lease space on AKP's Property.

4.      Once AKP learned about this arrangement between Defendant Dealer Direct and Defendant Breen Bros., it took action to remove the vehicles that were stored on AKP's premises without AKP's authorization.

5.      Defendants' illegal arrest and imprisonment of Plaintiff Espada and Defendants' illegal storage of the vehicles on Plaintiff AKP's Property were without lawful justification.

6.      Upon information and belief, Defendant Breen Bros. had contracts and/or arrangements with municipal agencies, including the Port Authority of New York and New Jersey (hereinafter the "Port Authority") and Metro Transit Authority (hereinafter "MTA"), to store vehicles, but there is no agreement permitting Defendant Breen Bros. to store vehicles on AKP's Property.

7.      The NYPD acted as a private security force for Defendant Breen Bros. to enforce its contracts with municipal agencies to store the unauthorized vehicles and preventing Plaintiffs from removing the unauthorized vehicles from AKP's Property, as evidenced by the NYPD's actions in falsely imprisoning Plaintiff Espada by intentionally, deliberately and maliciously disregarding NYPD procedures and protocols for the arrest of individuals, seizure of private property and forced entry on private property without court ordered permission.

8.       Defendant Breen Bros.' storage of unauthorized vehicles at AKP's Property caused a trespass on the property by storing scores of vehicles on AKP's Property without the authorization by AKP or an authorized representative of AKP which caused damages to Plaintiffs.

9.      After arresting Plaintiff Espada without any valid grounds, the NYPD and Defendant Breen Bros. engaged in conversion of Plaintiff Plaza's flatbed tow truck by permitting Defendant Breen Bros. to drive Plaintiff Plaza's flatbed tow truck back to AKP's Property, thereby preventing Plaintiff Plaza from the free use of its equipment. If NYPD had probable cause to arrest

Plaintiff Espada for Grand Larceny, then the NYPD would have impounded Plaintiff Plaza's flatbed tow truck as evidence against Plaintiff Espada.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1342(a)(3) and (4) and over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

11.     The federal civil rights claims in this action are brought pursuant to 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments to the Constitution of the United States.

12.     An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

13.     Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) as at least one of the Defendants resides in this district and a substantial part of the events and/or omissions were committed in this district.

## PARTIES

14.     Plaintiff Espada is a natural person who resides within the State of New York, County of Richmond.

15.     Plaintiff AKP was and still is a limited liability company, duly organized and existing under the laws of the State of New York and authorized to do business in the State of New York.

16.     Plaintiff Plaza was and still is a corporation, duly organized and existing under the laws of the State of New York and authorized to do business in the State of New York.

17.      Defendant City of New York (hereinafter the "City") is a municipal entity created and authorized under the laws of the State of New York. The City is authorized by law to maintain

a police department, and does maintain the NYPD, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

18.     Upon information and belief, Defendant Captain Lee is a natural person who resides within the State of New York. Defendant Captain Lee was at all times relevant to this Complaint, and still is, an NYPD Police Officer who unlawfully arrested and/or detained Plaintiff Espada in violation of his constitutional rights.

19.     Upon information and belief, Defendant Lieutenant Estevez is a natural person who resides within the State of New York. Defendant Lieutenant Estevez was at all times relevant to this Complaint, and still is, an NYPD Police Officer who unlawfully arrested and/or detained Plaintiff Espada in violation of his constitutional rights.

20.     Upon information and belief, Defendant Officer Center is a natural person who resides within the State of New York. Defendant Officer Center was at all times relevant to this Complaint, and still is, an NYPD Police Officer who unlawfully arrested and/or detained Plaintiff Espada in violation of his constitutional rights.

21.     Upon information and belief, Defendant Officer Campbell is a natural person who resides within the State of New York. Defendant Officer Campbell was at all times relevant to this Complaint, and still is, an NYPD Police Campbell who unlawfully arrested and/or detained Plaintiff Espada in violation of his constitutional rights.

22.     At all times hereinafter stated, Defendant Breen Bros. was and still is a corporation, duly organized under the laws of State of New York and authorized to do business in the State of New York.

23.     Upon information and belief, Joseph Breen (hereinafter "Breen") is a natural person who resides within the State of New York. Defendant Breen was at all times relevant to this Complaint, and still is, the owner of Defendant Breen Bros.

24.     At all times hereinafter stated, Defendant Dealer Direct was and still is a corporation, duly organized under the laws of State of New York and authorized to do business in the State of New York.

## STATEMENT OF FACTS

25.     Plaintiff AKP owns the Property located at 4350 Arthur Kill Road, Staten Island, New York.

26.     Pursuant to AKP's Operating Agreement, John Rosatti, the Managing Member ("hereinafter "Rosatti" or the "Managing Member"), has full, exclusive and complete discretion to manage and control the business and affairs of AKP, to make all decisions affecting the business and affairs of AKP and to take all such actions as he deems necessary or appropriate to accomplish the purpose of AKP.

27.     Neal Devito, the non-Managing Member of AKP (hereinafter "Devito" or the "Non-Managing Member"), never had the right or authority to enter into any agreements on behalf of AKP.

28.     Upon information and belief, Devito is an owner of Defendant Dealer Direct and 13 Miles, LLC.

29.     Defendant Dealer Direct does not own any portion of AKP.

30.     Defendant Dealer Direct does not own any portion of the Property.

31.     Despite not having any ownership interest, right to control, or right to possession in the Property, upon information and belief, Defendant Dealer Direct entered into an arrangement

with Defendant Breen Bros., wherein Defendant Dealer Direct illegally permitted Breen Bros to store vehicles on the Property. Defendant Dealer Direct lacked any authority to enter into any arrangement with Defendant Breen Bros. – or any other entity – to store vehicles on AKP's Property.

32.     The arrangement between Defendant Dealer Direct and Defendant Breen Bros. was entered into without the approval or knowledge of AKP.

33.     Upon information and belief, Breen Bros entered into an arrangement with municipal agencies, including the Port Authority, under which Defendant Breen Bros. stored vehicles at AKP's Property.

34.     At the entrance to the Property, there is a sign that reads "NO PARKING PRIVATE PROPERTY VIOLATERS WILL BE TOWED AT VEHICLE OWNERS EXPENSE" and lists Plaintiff Plaza as the authorized tow company.

35.     On or about May 11, 2023, Plaintiff AKP filed a Summons and Complaint and Order to Show Cause in the New York County Supreme Court against Devito, alleging that Devito had caused the unauthorized vehicles to be placed on the Property without the authorization of Plaintiff AKP. *See Arthur Kill Properties, LLC v. Neal Devito*, Index No.: 652308/2023 (hereinafter the "State Court Action").

36.     In opposition to the Order to Show Cause in the State Court Action, Devito stated that as of February 15, 2023, Devito did not store or place any vehicles on the Property and did not have any knowledge of how the unauthorized vehicles were placed on the Property. Devito further stated that he removed "all equipment, vehicles and any other item [Devito] had control over." *See* State Court Action, NYSCEF Docket Entry No. 15 at ¶ 18-19. Notably, Devito did not

make any representation in his capacity as an owner of Dealer Direct. In fact, he made no mention of Dealer Direct in his opposition.[1]

37.     In further support of its Order to Show Cause, Plaintiff AKP alleged that it was Devito, through his ownership in Defendant Dealer Direct, that had caused the unauthorized vehicles to be placed on the lot.

38.     Plaintiff AKP further alleged that Defendant Dealer Direct entered into an arrangement with Defendant Breen Bros. to permit Defendant Breen Bros. to store vehicles on the Property and that Defendant Breen Bros. was paying Devito and Defendant Dealer Direct for the storage of the unauthorized vehicles.

39.     Plaintiff AKP further affirmed that the vehicles that were placed on AKP's Property were not authorized to remain on AKP's Property.

40.     On or about June 12, 2023, following oral arguments on AKP's Order to Show Cause in the State Court Action, Judge Andrea Masley of the Kings County Supreme Court stated that Plaintiff AKP was permitted to remove any vehicles that were stored on the Property without the authorization of Plaintiff AKP.

41.     On or about August 1, 2023, the Managing Member of AKP, in accordance with Judge Masley's statement, directed Plaintiff Plaza to remove any illegally stored vehicles on the Property by using Plaintiff Plaza's tow trucks.

42.     As such, on August 8, 2023, Plaintiff Espada, an employee of Plaintiff Plaza, utilizing a Plaintiff Plaza flatbed tow truck that was identified as such, removed two illegally stored vehicles on the Property that were not authorized to be stored on the Property.

---

[1] Devito would later move to dismiss the underlying complaint. In opposition, AKP submitted a document it discovered in its computer system indicating the monthly dollar amount Breen Bros. paid Dealer Direct to store vehicles on the Property. *See* State Court Action.

43.     Upon information and belief, the two vehicles that Plaintiff Espada was directed to remove from the Property on August 8, 2023 were not authorized to be on the Property and were placed there by Defendant Breen Bros.

44.     Plaintiff Espada turned right out of the yard at 4350 Arthur Kill Road and proceeded to drive 2-3 blocks at which time a Defendant Breen Bros. tow truck, that was lying in wait, ambushed Plaintiff Espada by jetting out into traffic and prohibiting Plaintiff Espada from proceeding on his route.

45.     Two more Breen Bros. tow trucks then ambushed Plaintiff Espada from behind, preventing Plaintiff Espada from retreating to safety.

46.     Michael Breen was the driver of the first Breen Bros. tow truck that boxed Plaintiff Espada in from the front. Michael Breen exited his vehicle and aggressively rushed at Plaintiff Espada, yelling at him.

47.     Within one minute, a white truck driven by Joseph Breen pulled up to the ambush and quickly exited his vehicle in order to berate Plaintiff Espada and demanding to know why he was transporting those vehicles.

48.     Plaintiff Espada pled for his safety to be able to exit the area, but Defendant Breen Bros. maliciously refused to free Plaintiff Espada.

49.     Upon information and belief, Defendant Breen Bros., who was aware that it had no contract with Plaintiff AKP to store its vehicles, contacted its connections within the NYPD to utilize the NYPD as its private security force and to arrest Plaintiff Espada for legally removing the unauthorized vehicles from the Property.

50.     Defendant Breen Bros., through the use of the three (3) tow trucks and Joseph Breen's truck, thereafter illegally detained, imprisoned, and prevented Plaintiffs Espada and Plaza

from removing the unauthorized stored vehicles from the Property when it boxed Plaintiff Espada in on the street, preventing Plaintiff Espada from moving the tow truck on behalf of Plaza.

51.     When Defendant Breen Bros. boxed in Plaintiffs Espada and Plaza it improperly detained Plaintiffs Espada and Plaza.

52.     Defendant Breen Bros. improperly detained Plaintiffs Espada and Plaza until Defendant Breen Bros. could get the NYPD to appear to arrest Plaintiff Espada.

53.     Thereafter, Officer Center and Officer Campbell arrived at the location that Defendant Breen Bros. had detained Plaintiffs Espada and Plaza.

54.     Instead of immediately intervening into this illegal action by Defendant Breen Bros. and its agents, Officer Center and Officer Campbell chose to not act and remained in their vehicle watching this illegal spectacle unfold.

55.     Eventually, Officer Center and Officer Campbell approached Plaintiff Espada and Plaintiff Plaza's boxed in flatbed tow truck. Instead of focusing their attention on the illegal blockage of the public road and the capturing of Plaintiff Espada, the NYPD decided to target Plaintiff Espada, demanding to know what he was doing. In fact, Joseph Breen directed the officers present to arrest Espada even though he was fully aware that Defendant Breen Bros. had no contract with Plaintiff AKP to store the vehicles on the Property.

56.     Plaintiff Espada informed Officer Center and Officer Campbell that he was an employee of Plaintiff Plaza and that Plaintiff Plaza – the posted authorized tow company – instructed him to remove the unauthorized vehicles from AKP's Property.

57.     Officer Center went back to AKP's Property and confirmed that Plaintiff Plaza's name was posted as the tow truck company at AKP Property. Despite confirming Plaintiff Espada's statements that Plaintiff Plaza was the listed tow truck company and that he was an

employee of Plaintiff Plaza, Officer Center and Officer Campbell inexplicably decided to arrest Plaintiff Espada and placed him in handcuffs. Shockingly, in total disregard for more than sixty (60) years worth of standing law, the NYPD refused to provide Plaintiff Espada his constitutionally guaranteed right to be read his Miranda warnings. Instead, they cuffed him, threw him in the back of a police car, and carted him off to jail without any consideration for his constitutional rights.

58.     When the NYPD returned back to their precinct with Plaintiff Espada, they threw him in a holding cell where he remained for five (5) hours without being read his Miranda rights, nor being apprised why he was being withheld or what was going to happen to him.

59.     Eventually, Plaintiff Espada was brought upstairs to be fingerprinted and only at that point was he first apprised of his Miranda rights, the most critical of all, the right to contact an attorney.

60.     After fingerprinting, Plaintiff Espada was tossed back into the holding cell where he remained till 7:30AM the next day, where he was transported to the 121 Precinct.

61.     Plaintiff Espada was then taken to the Richmond County courthouse where he was forced into another holding cell where he remained with no further information.

62.     At about 4:30PM – after more than 24-hours of his abhorrent and illegal treatment – Plaintiff Espada was informed by a court officer that the charges were being dropped. In releasing him, Plaintiff Espada was not provided any information about what the basis was for the charges and why they were dropped. The court officer snuck Plaintiff Espada out the back-door of the courthouse, as if to hide the fact that he was arrested.

63.     The NYPD knew or should have known that Plaintiffs Espada and Plaza had not engaged in Grand Larceny based upon Plaintiff Espada's statement that he was authorized by Plaintiffs AKP and Plaza to remove the unauthorized vehicles from the Property.

64.     The NYPD acted in concert with Defendant Breen Bros. to act as Defendant Breen Bros.' private security force to harass and illegally prevent Plaintiff AKP from removing the unauthorized vehicles from its property and by arresting Plaintiff Espada.

65.     Subsequently, one of AKP's authorized representatives, Adam Rosatti, personally appeared in the 123 Precinct and attempted to provide Lieutenant Estevez with documentation evidencing that Plaintiffs Espada and Plaza were instructed by Plaintiff AKP to remove the unauthorized stored vehicles from the Property. Defendant Lieutenant Estevez yelled at AKP's authorized representative and stated that he refused to review the documentation that Plaintiff AKP attempted to provide to him.

66.     Subsequently, Captain Lee was provided proof that AKP owned the Property, proof that the vehicles that Plaintiffs Espada and Plaza attempted to remove were not authorized to be placed on the Property, and that Plaintiffs Espada and Plaza were instructed by AKP to remove the unauthorized vehicles from the Property and that AKP had the right to remove the unauthorized vehicles from its Property.

67.     Despite knowledge that Plaintiffs Espada and Plaza had the right to remove the vehicles, Lieutenant Estevez worked in concert with Defendant Breen Bros. to unlawfully arrest and incarcerate in jail Plaintiff Espada and take into their possession and remove Plaintiff Plaza's flatbed tow truck.

68.     Due to the NYPD's retention of Plaintiff Plaza's flatbed tow truck following Plaintiff Espada's arrest, Plaintiff Plaza was unable to use its flatbed tow truck for 2 days, thereby depriving it of $5,000 in addition to the wages it continued to pay its tow truck manager.

69.     Despite knowledge that Plaintiffs Espada and Plaza had the right to remove the vehicles, Captain Lee worked in concert with Defendant Breen Bros. to continue to unlawfully detain Plaintiff Espada.

70.     Moreover, following the arrest of Plaintiff Espada, the NYPD forced Plaintiff AKP to allow Defendant Breen Bros. to drive Plaintiff Plaza's flatbed tow truck to return the vehicles to AKP's Property.

71.     After Plaintiff Plaza gained access to its property, it examined the vehicle and discovered that Defendant Breen Bros. had removed the SD card from a dashboard mounted camera that had the ability to record sound and motion from the tow truck. This was obviously done to cover the nefarious and illegal conduct of the Defendants.

72.     The NYPD's decision to permit Defendant Breen Bros. to drive Plaintiff Plaza's flatbed tow truck back to the Property to return the unauthorized vehicles to the Property evidences that the NYPD lacked probable cause to detain and arrest Plaintiff Espada. If the NYPD maintained probable cause to arrest Plaintiff Espada with Grand Larceny, it would have been required to impound Plaintiff Plaza's tow truck and the unauthorized vehicles as evidence of the alleged crime. Moreover, the NYPD had no legal right to force AKP to accept entry upon its land of any person or object.

73.     Due to Defendants City's, Captain Lee's, Lieutenant Estevez's and Officer Center's unlawful arrest and detention of Plaintiff Espada, he has suffered severe emotional distress.

74.     While Espada was in custody, he informed the NYPD that there was medication that he wanted to take relating to a medical condition, but the NYPD said that they could not administer medication to him, exacerbating his severe emotional distress.

75.     Plaintiff Plaza paid Espada wages for the time he was in custody.

76.     On August 9, 2023, Defendants dropped all potential charges against Plaintiff Espada.

77.     Upon information and belief, Defendants dropped all potential charges against Plaintiff Espada due to Defendants' knowledge that it did not have any right to detain and imprison Plaintiff Espada in the first place.

78.     On August 14, 2023, Defendant Breen Bros. and Defendant City blockaded ingress and egress to the AKP Property in order to prevent Plaintiff AKP's constitutional use of its Property, including utilizing its Property to conduct its normal business operations, which included Amazon's and Plaza Auto Mall's use of the Property. NYPD, without any justification and in concert with Defendant Breen Bros., appeared at the blockade and permitted the blockade to continue unabated for a period of time.

79.     The blockade of the ingress and egress took place at the entrance of AKP's Property.

80.     The blockade consisted of multiple Defendant Breen Bros. vehicles obstructing access to Plaintiff AKP's Property.

81.     Defendants Breen Bros.' and Dealer Direct's unauthorized storage of the vehicles on the Property has prevented Plaintiff AKP from being able to expand its business with Amazon to store its vehicles at the Property. If Defendants Breen Bros. and Dealer Direct did not store the unauthorized vehicles on the Property, Plaintiff AKP would have been able to provide more space – specifically an additional 3-acres of space – for Amazon to store its vehicles at the Property.

82.     Defendants Breen Bros.' and Dealer Direct's unauthorized storage of the vehicles on the Property has prevented Plaintiff AKP from offering 3-acres of storage to Amazon, which resulted in a loss to AKP of $25,000 per month for the previous twelve (12) months.

83.     Due to Defendant Breen Bros.' illegal conduct, AKP has been forced to hire twenty-four seven day (24/7) armed security to protect the Property.

84.     On or about August 15, 2023, Plaintiffs AKP was forced to hire a private investigator to determine the owners of the unauthorized vehicles.

85.     The Port Authority informed Plaintiff AKP that some of the vehicles that are stored on the Property are owned and/or maintained by the Port Authority.

86.     The Port Authority has further informed Plaintiff AKP that the storage of its vehicles at the Property are not in compliance with the Port Authority conditions and requirements related to storage of its vehicles and/or in accordance with its agreement with Defendant Breen Bros.

## AS AND FOR A FIRST CAUSE OF ACTION
**Unlawful Seizure/False Arrest of Plaintiff Espada as Against Defendants City, Captain Lee, Lieutenant Estevez and Officer Center Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiffs' Rights Under the Fourth and Fourteenth Amendments to the United States Constitution[2]**

87.     Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

88.     Defendants City's, Captain Lee's, Lieutenant Estevez's and Officer Control's seizure and detention of Plaintiff Espada was done without any judicial warrant authorizing them to seize and detain Plaintiff, was unreasonable and was done without privilege or lawful justification.

89.     Plaintiff Espada did not consent and was conscious of his confinements by Defendants.

---

[2] Plaintiffs reserve the right to amend this Complaint to include a cause of action for False Arrest pursuant to New York State Law pending Plaintiffs' service of a Notice of Claim.

90.     Defendants City, Captain Lee, Lieutenant Estevez and Officer Control did not have individualized probable cause to seize, detain or arrest Plaintiff Espada.

91.     Defendants City, Captain Lee, Lieutenant Estevez and Officer Control evidenced their lack of probable cause to seize, detain or arrest Plaintiff Espada when they permitted Defendant Breen Bros. to drive Plaintiff Plaza's flatbed tow truck – potential evidence of Grand Larceny – back to AKP's Property and based upon the tow truck driver's representation that he was authorized to remove the two unauthorized vehicles off the Property, which information is further confirmed by the signage on Plaintiff Plaza's vehicle bearing its name and posted at the Property.

92.     As a result of Defendants City's, Captain Lee's, Lieutenant Estevez's and Officer Control's acts and omissions, Defendants City, Captain Lee, Lieutenant Estevez and Officer Control deprived Plaintiff Espada of his federal, state, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and expenses; and/or otherwise damaged and injured Plaintiff Espada.

93.     The unlawful conduct of Defendants City, Captain Lee, Lieutenant Estevez and Officer Control was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## AS AND FOR A SECOND CAUSE OF ACTION
**Malicious Prosecution of Plaintiff Espada as Against Defendants City, Captain Lee and Officer Center Lieutenant Estevez Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiffs' Rights Under the Fourth Amendment to the United States Constitution**

94.     Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

95.     Defendants City, Captain Lee, Lieutenant Estevez and Officer Control initiated the prosecution against Plaintiff Espada when they illegally arrested Plaintiff Espada while he was rightfully removing unauthorized vehicles from the Property.

96.     Defendants City Captain Lee, Lieutenant Estevez and Officer Control lacked probable cause to believe Plaintiff was guilty or that a prosecution would succeed.

97.     Defendants City Captain Lee, Lieutenant Estevez and Officer Control acted with malice when they falsely detained and arrested Plaintiff Espada in order to prevent Plaintiff Espada from removing the two unauthorized vehicles from the Property.

98.     Defendants City's Captain Lee's, Lieutenant Estevez's and Officer Control's actual malice may be inferred in the absence of probable cause to detain and arrest Plaintiff Espada.

99.     The prosecution was terminated in Plaintiff Espada's favor, when the charges against Plaintiff Espada were withdrawn after holding Plaintiff Espada in confinement for approximately twenty-four (24) hours.

100.    Accordingly, Defendants violated Plaintiff Espada's Fourteenth Amendment rights.

101.    As a direct and proximate result of this unlawful conduct, Plaintiff Espada sustained the damages alleged herein.

### AS AND FOR A THIRD CAUSE OF ACTION
### Civil Conspiracy as Against Defendants Pursuant to 42 U.S.C. § 1983

102.    Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

103.    Defendants City, Captain Lee, Lieutenant Estevez and Officer Control are state actors.

104.    Defendant Breen Bros. is a private entity.

17

105.    Defendant Breen is a private entity.

106.    Defendant Dealer Direct is a private entity.

107.    Defendants City, Captain Lee, Lieutenant Estevez, Officer Control, Breen Bros., Breen and Dealer Direct maintained an illegal arrangement wherein Defendants City, Captain Lee, Lieutenant Estevez and Officer Control acted as a private security force to prevent Plaintiff AKP from rightfully removing vehicles from the Property that were not authorized to be there and to assist and facilitate Defendant Breen Bros. for-profit operation.

108.    Defendants acted in concert to inflict an unconstitutional injury against Plaintiff AKP wherein Defendants prevented Plaintiff AKP's right to enjoyment of its Property.

109.    Defendants acted in concert to inflict an unconstitutional injury against Plaintiff AKP by taking AKP's Property without just compensation to Plaintiff AKP.

110.    Defendants took an overt act to further their goal to unconstitutionally prevent Plaintiff AKP's use of Plaintiff AKP's Property without valid compensation and when it imprisoned Plaintiffs Espada and Plaza.

111.    Through Defendant's unconstitutional actions, Plaintiffs were harmed.

## AS AND FOR A FOURTH CAUSE OF ACTION
### Trespass

112.    Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

113.    During all relevant times, Plaintiff AKP has had, and continues to have, a reasonable expectation of its right to use and enjoy and conduct business without interference from any of the Defendants.

114.    Defendants have interfered with and continue to interfere with Plaintiff AKP's use and enjoyment of its property by storing vehicles for unapproved parties causing a trespass upon

18

the property and further frustrating the business purpose of Plaintiff AKP. Defendants' interference was and is substantial, intentional, and unreasonable.

115.    Defendants have further interfered with and continue to interfere with Plaintiff AKP's use and enjoyment of its property by preventing Plaintiff AKP from accessing its property, causing a trespass upon the property and further frustrating the business purpose of Plaintiff AKP. Defendants' interference was and is substantial, intentional, and unreasonable.

116.    The trespass of Defendants has directly caused and will continue to directly cause damages to Plaintiff AKP.

117.    Defendants' continued refusal to obey the directive and remove the vehicles is thwarting Plaintiff AKP's use of its property, including, rendering Plaintiff AKP incapable of accepting a third-party proposal from Amazon to store vehicles at its property.  In doing so, Defendants have thwarted Plaintiff AKP's business purpose. Defendants' interference was and is substantial, intentional, and unreasonable.

118.    Plaintiffs Plaza and AKP have also incurred towing and storage costs for removing some of the vehicles illegally stored on the Property.

119.    AKP is also entitled to all damages including compensatory, consequential, disgorgement of profits, attorneys' fees and costs plus interest.

## AS AND FOR A FIFTH CAUSE OF ACTION
### Private Nuisance

120.    Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

121.    During all relevant times, Plaintiff AKP has had, and continues to have, a reasonable expectation of its right to use and enjoy and conduct business without interference from Defendants, who require Plaintiff AKP's approval prior to using any of the Property.

19

122.    Defendants have interfered with and continue to interfere with Plaintiff AKP's use and enjoyment of its property by storing vehicles without Plaintiff AKP's approval.

123.    Defendants continued presence of the vehicles on the Property and Defendants' improper and unlawful actions in preventing AKP from removing the unauthorized vehicles is thwarting Plaintiff AKP's use of its Property, for example, being unable to expand its business with Amazon to use the Property. In doing so, Defendants have thwarted Plaintiff AKP's business purpose. Defendants' interference was and is substantial, intentional, and unreasonable.

124.    The interference of Defendants has directly caused and will continue to directly cause damages to Plaintiff AKP as a result of this interference.  This interference has and continues to harm Plaintiff AKP's use and enjoyment of its property.

125.    Additionally, Defendants have also prevented access onto 4350 Arthur Kill Road precluding Plaintiff AKP from complying with the terms of its contract with Amazon and Plaza Auto Mall by preventing their access to the Property thereby interfering with Plaintiff AKP's use and enjoyment of its property.

126.    Plaintiff AKP is entitled to all damages including compensatory, consequential, disgorgement of profits, attorneys' fees and costs plus interest.

## AS AND FOR A SIXTH CAUSE OF ACTION
### Conversion

127.    Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

128.    At all times relevant hereto, Plaintiff Plaza had the exclusive right of possession of its flatbed tow truck.

129.    When Defendants City, Captain Lee, Lieutenant Estevez and Officer Center illegally seized Plaintiff Plaza's flatbed tow truck, Defendants City, Captain Lee, Lieutenant

Estevez and Officer Center exceeded their possessory right in Plaintiff Plaza's flatbed tow truck without Plaintiff Plaza's consent or legal justification.

130.     Plaintiff Plaza notified Defendants City, Captain Lee, Lieutenant Estevez and Officer Center that they wrongfully converted Plaintiff Plaza's flatbed tow truck.

131.     Defendants City, Captain Lee, Lieutenant Estevez and Officer Center acted with deceit, malice, fraud, and with reckless disregard for the rights of Plaintiff Plaza.

132.     The taking and retention of Plaintiff Plaza's flatbed tow truck constitutes an unlawful acquisition of Plaintiff Plaza's property by Defendants City, Captain Lee, Lieutenant Estevez and Officer Center.

133.     Defendants City's, Captain Lee's, Lieutenant Estevez's and Officer Center's unlawful acquisition was made in conscious disregard of Plaintiff Plaza's rights and constitutes willful and/or wanton negligence.

134.     Plaintiff Plaza seeks to recover financial loss, costs, reasonable attorneys' fees, punitive damages, compensatory damages, treble damages and special damages, consequential and incidental damages, and pre- and post-judgment interest in an amount as the proof at trial may warrant.

135.     By reason of the foregoing, Plaintiff Plaza is entitled to a money judgment in an amount as the proof at trial may warrant.

## AS AND FOR A SEVENTH CAUSE OF ACTION
**False Imprisonment Pursuant to State Law of Plaintiff Espada as Against Defendant Breen Bros.**

136.     Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

137.    Defendant Breen Bros. imprisoned Plaintiff Espada when it stopped Plaintiff Espada from leaving the Property with Plaza's tow truck.

138.    Plaintiff Espada did not consent and was conscious of his confinements by Defendant Breen Bros.

139.    Defendant Breen Bros. did not have justification or authority, legal or otherwise, to seize or detain Plaintiff Espada.

140.    As a result of Defendant Breen Bros.' acts and omissions, Defendant Breen Bros. deprived Plaintiff Espada of his state and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff Espada.

141.    The unlawful conduct of Defendant Breen Bros. was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against it.

## **DEMAND FOR JURY**

142.    Plaintiffs demand trial by jury.

**WHEREFORE,** Plaintiffs respectfully request this Court for judgment:

a.  on all Causes of Action, awarding damages to Plaintiffs in an amount to be determined at trial, plus interest thereon, together with the costs, punitive damages, attorneys fees and disbursements of this action;

b.  A declaratory judgment prohibiting the Defendants Breen Bros., Breen and Dealer Direct from continuing to store vehicles on the property located at 4350 Arthur Kill Road;

c.  A declaratory judgment prohibiting the Defendants from preventing access onto 4350 Arthur Kill Road to access Arthur Kill's property;

d.  Compensatory damages to be determined at trial;

e.  Consequential damages to be determined at trial;

f.  Disgorgement of profits;

g.  Emotional distress damages for Plaintiff Espada, to be determined at trial; and

h.  Attorneys' fees, costs of suit, pre and post judgment interest and such other relief as the

Court deems fair and equitable.

Dated: Lake Success, New York
      August 16, 2023

                                    **MILMAN LABUDA LAW GROUP PLLC**

                                    /s Kyle F. Monaghan, Esq.
                                    Jamie S. Felsen, Esq.
                                    Michael J. Mauro, Esq.
                                    Kyle F. Monaghan, Esq
                                    3000 Marcus Avenue, Suite 3W8
                                    Lake Success, NY 11042-1073
                                    (516) 328-8899 (office)
                                    (516) 328-0082 (facsimile)
                                    jamiefelsen@mllaborlaw.com
                                    michael@mllaborlaw.com
                                    kyle@mllaborlaw.com
                                    *Attorneys for Plaintiffs*