UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------- x

MILTON ESPADA, ARTHUR KILL PROPERTIES, : 
LLC and PLAZA BODY SHOP, INC., :

                                  :       REPORT AND

                    Plaintiffs, :       RECOMMENDATION

                                  :

        -against- :       No. 23-CV-6186-NRM-JRC

                                  :

CITY OF NEW YORK, NEW YORK POLICE : 
DEPARTMENT CAPTAIN GLORISEL LEE, NEW : 
YORK POLICE DEPARTMENT LIEUTENANT : 
MIGUEL ESTEVEZ, NEW YORK POLICE : 
DEPARTMENT OFFICER DANIEL CENTER, NEW : 
YORK POLICE DEPARTMENT ROBERT : 
CAMPBELL, BREEN BROS. TOWING, INC., : 
JOSEPH BREEN, and DEALER DIRECT SERVICES, : 
INC., :

                                  :

                 Defendants. :

                                  :

---------------------------------------------------------------------x

JAMES R. CHO, United States Magistrate Judge:

On August 16, 2023, plaintiffs Milton Espada ("Espada"), Arthur Kill Properties, LLC ("AKP") and Plaza Body Shop, Inc. ("Plaza," and collectively, "plaintiffs") commenced this action arising from certain defendants' unauthorized use of AKP's property to store vehicles, and Espada's arrest by the New York City Police Department (the "NYPD"). *See* Compl., Dkt. 1. Plaintiffs name as defendants the City of New York, Captain Glorisel Lee ("Capt. Lee"), Lieutenant Miguel Estevez ("Lt. Estevez"), Officer Daniel Center ("Off. Center"),[1] Officer Robert Campbell ("Off. Campbell"), Breen Bros. Towing, Inc. ("Breen"), Joseph Breen, and Dealer Direct Services, Inc. ("Dealer Direct").

Currently before this Court, on referral from the Honorable Nina R. Morrison, is plaintiff

---

[1] The Complaint contains several typographical errors, referring to Officer Center as "Officer Control." *See, e.g.*, Compl. ¶¶ 88, 95, 103.

AKP's motion for default judgment against defendant Dealer Direct.  *See* Mot. for Default J., Dkt. 34.  For the reasons set forth below, this Court respectfully recommends granting AKP's motion for default judgment and entering judgment against only Dealer Direct.

## Factual Background

The following facts are drawn from the Complaint, which are accepted as true for purposes of this motion, and AKP's inquest submissions.  *See* Dkts. 1, 34, 41.

AKP owns property located at 4350 Arthur Kill Road, Staten Island, New York (the "Property").  Compl. ¶ 25.  Pursuant to AKP's operating agreement, John Rosatti ("Rosatti"), AKP's Managing Member, has full authority to manage and control the business and affairs of AKP.  *Id.* ¶ 26.  Neal Devito ("Devito") was the non-Managing Member of AKP and an owner of defendant Dealer Direct, during the relevant time period.  *Id.* ¶¶ 27, 28.

Without any authority or consent from AKP, Dealer Direct entered into an agreement with Breen to permit Breen to store its vehicles on the Property.  *Id.* ¶¶ 3, 27, 31-32, 38.  As a result, AKP suffered a loss of storage fees that AKP would have otherwise earned for the portion of the Property used by Breen.  *Id.* ¶¶ 81-82, 113-17, 121-26.  When AKP learned of this arrangement, it took action to remove the vehicles that were stored on the Property without AKP's authorization.  *Id.* ¶¶ 4, 41.

On or about May 11, 2023, AKP commenced an action in New York Supreme Court, New York County against Devito, alleging that Devito had caused the unauthorized vehicles to be placed on the Property without AKP's permission.  *Id.* ¶ 35; *Arthur Kill Props., LLC v. Neal Devito*, Index No.: 652308/2023.  On or about June 12, 2023, Judge Andrea Masley of the New York Supreme Court found that AKP was permitted to remove any vehicles that were stored on the Property without the authorization of plaintiff AKP.  Compl. ¶ 40.  Accordingly, on or about

2

August 1, 2023, Rosatti directed Plaza to remove any illegally stored vehicles on the Property using Plaza's tow trucks. *Id.* ¶ 41.

On or about August 8, 2023, Espada, an employee of Plaza, towed two vehicles off the Property that had been stored there without AKP's permission. *Id.* ¶¶ 2, 42. At the entrance to the Property, there was a sign posted that stated: "NO PARKING PRIVATE PROPERTY[.] VIOLATORS WILL BE TOWED AT VEHICLE OWNERS EXPENSE." *Id.* ¶ 34. The sign also listed Plaza as the authorized towing company. *Id.* After driving a few blocks, Espada was surrounded by Breen's tow trucks, which detained Espada until Officers Center and Campbell arrived at the location. *See id.* ¶¶ 44-53, 55. Ultimately, Lt. Estevez arrested Espada for grand larceny. *Id.* ¶¶ 2-3, 9, 57. Despite being presented with documentary evidence that the vehicles at issue were not authorized to park on AKP's property and that AKP had the right to remove those vehicles, the NYPD, Lt. Estevez, Capt. Lee, Off. Center and Off. Campbell refused to release Espada from custody until the District Attorney declined to press charges due to lack of probable cause. *Id.* ¶¶ 3, 57, 62, 76.

AKP has submitted a declaration from its representative stating that if not for Dealer Direct and Breen, AKP would have been able to charge storage fees for the area used by Dealer Direct and Breen equal to $125.00 per car, per day, for six months. *See* Decl. of Adam Rosatti ("Rosatti Decl.") ¶¶ 12-13, Dkt. 34-2; Supp. Decl. of Adam Rosatti ("Supp. Rosatti Decl.") ¶¶ 6, 11, Dkt. 41 ("AKP's storage rental price has ranged typically between $100 per day to $175 per day."). For example, Plaza Auto Mall has paid AKP storage fees between $100 and $175 per day. *See* Supp. Rosatti Decl. ¶¶ 6-8 & Ex. A, Dkt. 41-1 (invoices showing storage fees paid between $100 and $175 per day). The portion of the Property that was rendered unusable to AKP would have been able to store at least 100 cars per day. Rosatti Decl. ¶ 13; Supp. Rosatti

Decl. ¶ 9.  According to AKP, it incurred damages in the amount of $2,250,000 based on those lost storage fees ($125 x 100 cars x 180 days).  Rosatti Decl. ¶¶ 13-14; Supp. Rosatti Decl. ¶ 11.

AKP's representative further avers that due to the actions of Dealer Direct and Breen, AKP was unable to rent an additional three acres of the Property to Amazon.com Services, LLC ("Amazon") to store its vehicles on the Property for seven months.  Rosatti Decl. ¶¶ 15-16; Supp. Rosatti Decl. ¶¶ 13-14; *see* Compl. ¶¶ 81-82, 117, 123, 125.  But for the conduct of Dealer Direct and Breen, AKP would have been able to rent out each acre to Amazon for $30,000 for seven months, resulting in damages in the amount of $630,000 ($30,000 x 3 acres x 7 months).  *See* Rosatti Decl. ¶ 16; Supp. Rosatti Decl. ¶ 16 & Ex. B (Parking License First Amendment), Dkt. 41-2.

## Procedural Background

On August 16, 2023, plaintiffs commenced this action.  *See* Dkt. 1.  Plaintiff Espada brings claims for false arrest and malicious prosecution against defendants City of New York, Capt. Lee, Lt. Estevez and Off. Center, pursuant to 42 U.S.C. § 1983 ("section 1983") (First and Second Cause of Action), and a claim for false imprisonment against defendant Breen (Seventh Cause of Action).  All plaintiffs bring a claim for civil conspiracy against all defendants, except for Dealer Direct,[2] pursuant to section 1983 (Third Cause of Action).  Plaintiff AKP brings state law claims for trespass and private nuisance against all defendants (Fourth and Fifth Causes of Action).  Plaintiff Plaza brings a state law claim for conversion against defendants City of New York, Capt. Lee, Lt. Estevez and Off. Center (Sixth Cause of Action).[3]

All of the defendants have filed an Answer to the Complaint, except for Dealer Direct.

---

[2] AKP has abandoned its civil conspiracy claim against Dealer Direct.  *See* Pl. Mem. at 7 n.2, Dkt. 34-1.

[3] Although Off. Campbell's name appears in the caption, Off. Campbell is not specifically referenced in any of the seven causes of action.

After Dealer Direct was served with the Summons and Complaint, Dealer Direct failed to appear or otherwise defend the action, leading plaintiffs to seek entry of default on September 20, 2023, *see* Request for Certificate of Default, Dkt. 18, which was granted on October 4, 2023, *see* Clerk's Entry of Default, Dkt. 21.  On April 11, 2025, plaintiff AKP moved for default judgment, *see* Mot. for Default J., Dkt. 34, which District Judge Morrison referred to the undersigned for a report and recommendation, *see* Order dated April 14, 2025.

In connection with the instant motion, the Court directed AKP to supplement its submissions with detailed proof of damages.  *See* Order dated Oct. 10, 2025.  On October 30, 2025, AKP filed a supplemental declaration, as well as documentary evidence in support of its request for damages.  *See* Mot. to Amend, Dkt. 41.  At a motion hearing held on December 2, 2025, Dealer Direct failed to appear despite being served with notice of the hearing.  *See* Min. Entry dated Dec. 2, 2025; Dkt. 43.

## Discussion

### A.    Liability -- Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure ("FRCP") governs motions for default judgment.  The Rule sets forth a two-step process for entry of a default judgment.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993).  First, the Clerk of the Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. *See id.*; *see also* Fed R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.").  This first step is nondiscretionary.  *See United States v. Conolly*, 694 F. App'x 10, 12 (2d Cir. 2017).  Second, after the Clerk of the Court enters a default against a party, if that party fails to appear or otherwise move to set aside

5

the default pursuant to Rule 55(c), the plaintiff may apply to the court for a default judgment. *See* Fed. R. Civ. P. 55(b)(2).

Here, after Dealer Direct failed to respond to the Complaint, the Clerk of the Court entered default against it. Dkt. 21. To date, Dealer Direct has not appeared or moved to vacate the entry of default.

When evaluating a plaintiff's application for a default judgment, "a court is required to accept all [] factual allegations as true and draw all reasonable inferences in [plaintiff's] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Lab'ys., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotations and citations omitted); *see also TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, 536 F. App'x 45, 46 (2d Cir. 2013) ("[P]rior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law.") (internal quotations and citations omitted).

"Default judgments are 'generally disfavored and are reserved for rare occasions.'" *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011) (quoting *Enron Oil*, 10 F.3d at 96). Providing guidance as to when a default judgment is appropriate, the Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort. *See Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "afford[] litigants a reasonable chance to be heard." *Enron Oil*, 10 F.3d at 95-96. Thus, in light of the "oft-stated

6

preference for resolving disputes on the merits," doubts should be resolved in favor of the defaulting party. *See id.* at 95. Accordingly, a plaintiff is not entitled to a default judgment as a matter of right simply because a defendant is in default. *See Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

A default serves as the defendant's admission that the complaint's well-pleaded factual allegations are true. *See Mickalis Pawn Shop*, 645 F.3d at 137; *Finkel*, 577 F.3d at 84. A fact is not considered "well-pleaded," however, "if it is inconsistent with [the] other allegations of the complaint or with facts of which the court can take judicial notice, or is contrary to uncontroverted material in the file of the case." *Hop Hing Produces Inc. v. Lin Zhang Trading Co., Inc.*, No. 11-CV-3259, 2013 WL 3990761, at *3 (E.D.N.Y. Aug. 5, 2013) (internal quotations and citations omitted). Ultimately, whether to grant a motion for default judgment is "left to the [court's] sound discretion." *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999); *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co.*, 270 F. Supp. 3d 593, 606 (E.D.N.Y. 2017).

### B.    Service of Process

Where the defendant has defaulted, the plaintiff must establish adequate service in order to obtain a default judgment. *See Chen v. Best Miyako Sushi Corp.*, No. 16-CV-2012, 2021 WL 707273, at *8 (S.D.N.Y. Feb. 1, 2021), *report and recommendation adopted*, 2021 WL 706412 (S.D.N.Y. Feb. 19, 2021); *Miranda v. Astoria Provisions, LLC*, No. 19-CV-2923, 2020 WL 6370058, at *3 (E.D.N.Y. July 24, 2020), *report and recommendation adopted*, 2020 WL 5810160 (E.D.N.Y. Sept. 30, 2020); *see also Mickalis Pawn Shop*, 645 F.3d at 133 ("[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal

7

jurisdiction over the defendant.") (internal quotation marks, brackets, and citation omitted). "Default judgments are disfavored, so before a district court will enter one, it must ensure that the defaulting defendants received notice of the claims against them and were provided an opportunity to answer those allegations." *Johannes Baumgartner Wirtschafts-Und Vermögensberatung GmbH v. Salzman*, 969 F. Supp. 2d 278, 287 n.6 (E.D.N.Y. 2013) (citing *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004)). Plaintiffs bear the burden of proving that service was adequate. *See Rahman v. Red Chili Indian Café, Inc.*, No. 17-CV-5156, 2021 WL 2003111, at *2 (S.D.N.Y. May 19, 2021).

Rule 4 of the Federal Rules of Civil Procedure permits service on a corporation by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process, or in any manner authorized by state law. *See* Fed. R. Civ. P. 4(e)(1), 4(h)(1). Similarly, New York law provides for service of process on a corporation by personally delivering process to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service. *See* N.Y. C.P.L.R. § 311(a)(1).

Here, AKP served Dealer Direct by delivery to its "office manager." *See* Summons Returned Executed, Dkt. 12. "Rule 4(h)(1) does not require that service be made upon a restricted class of formally titled officials, but rather permits it to be made upon a representative so integrated with the organization that he will know what to do with the papers." *Loc. 78, Asbestos, Lead & Hazardous Waste Laborers, AFL-CIO v. Termon Const., Inc.*, No. 01-CV-5589, 2003 WL 22052872, at *4 (S.D.N.Y. Sept. 2, 2003) (internal quotation marks and citation omitted). Further, the New York Court of Appeals has noted that the CPLR recognizes "any other agent authorized by appointment" and that a "corporation is free to choose its own agent

8

for receipt of process without regard to title or position." *Fashion Page, Ltd. v. Zurich Ins. Co.*, 50 N.Y.2d 265, 272 (1980).  The process server served the Summons and Complaint at defendant Dealer Direct's business address on a person who identified herself as the "[o]ffice manager." Dkt. 12.  The Court finds that AKP properly served Dealer Direct.  It is reasonable to conclude that the office manager was either a managing agent or authorized to accept service on behalf of Dealer Direct.  *See Gesualdi v. Reid*, No. 19-CV-4132, 2021 WL 8316386, at *5 (E.D.N.Y. Aug. 12, 2021) (recommending granting default judgment where corporate defendant was served by "officer manager"); *see also Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54 (2d Cir. 2002) ("In New York, a process server's affidavit of service establishes a prima facie case of the account of the method of service, and thus, in the absence of contrary facts, we presume that Pacific was properly served with the complaint.").

Here, Dealer Direct did not respond to the Complaint despite proper service.  AKP also filed affidavits confirming service of the motion for default judgment, this Court's Order scheduling a hearing on the motion, and the minute entry for the conference.  *See* Dkts. 34-5, 39, 43, 44.  Dealer Direct has nonetheless failed to respond to AKP's motion for default judgment or otherwise appear in this action.  Accordingly, this Court recommends finding that defendant Dealer Direct's failure to answer or otherwise respond to the Complaint constitutes an admission of the factual allegations therein, and now proceeds to consider whether those facts establish defendant Dealer Direct's liability.

**C.   Rule 54(b) of the Federal Rules of Civil Procedure**

AKP's motion for default judgment seeks judgment against only defendant Dealer Direct. Since this litigation will continue against the other defendants, the Court must consider whether entering a default judgment against only one party is premature.  *See Fin. Servs. Vehicle Tr. v.*

9

*Osmanaj*, No. 22-CV-7491, 2023 WL 7000935, at *3 (E.D.N.Y. Aug. 15, 2023); *Bleecker v. Zetian Sys., Inc.*, No. 12-CV-2151, 2013 WL 5951162, at *6 (S.D.N.Y. Nov. 1, 2013).  Prior to entering judgment against some, but not all, of the parties to an action, Rule 54(b) requires that "the court expressly determine[] that there is no just reason for delay [of the entry of judgment]." Fed. R. Civ. P. 54(b).  "The decision of whether to enter a final judgment against some but fewer than all of the parties in an action is left to the sound discretion of the district court."  *Abbott Laby's v. Adelphia Supply USA*, No. 15-CV-5826, 2020 WL 7643213, at *2 (E.D.N.Y. Dec. 23, 2020); *see Fin. Servs.*, 2023 WL 7000935, at *3.

Here, the Court finds no just reason for delay of entry of judgment against defendant Dealer Direct.  AKP does not allege that Dealer Direct is jointly and/or severally liable for private nuisance and trespass with any other defendant.  *See Int'l Controls Corp. v. Vesco*, 535 F.2d 742, 746 n.4 (2d Cir. 1976).  Further, AKP does not allege that the liability of another defendant depends on the liability of defendant Dealer Direct.  *See id.* ("where the liability of one defendant necessarily depends upon the liability of others"); *Chain v. North East Freightways, Inc.*, No. 16-CV-3371, 2020 WL 7481142, at *17 (S.D.N.Y. Dec. 18, 2020) ("when it is necessary that the relief against the defendants be consistent . . . it would be incongruous to hold one party liable when a court has determined that another party in essentially the same position is not.") (internal quotation marks and citation omitted), *report and recommendation adopted*, 2021 WL 5051656 (S.D.N.Y. Nov. 1, 2021).  Rather, the private nuisance and trespass claims alleged against the other defendants concern different conduct than that alleged against defendant Dealer Direct. Specifically, the other defendants are alleged to have prevented AKP from removing the offending vehicles.  *See* Pl. Mem. at 7, Dkt. 34-1.  Granting judgment against Dealer Direct now will not prejudice any other defendant because they can still dispute their liability, and there is no

10

possibility of inconsistent judgments.

###### D.    Private Nuisance

In New York, to plead a private nuisance claim, a plaintiff must establish that defendant's conduct (1) caused the invasion of plaintiff's interest in the private use and enjoyment of land; and (2) such invasion is intentional and unreasonable, (3) negligent or reckless, or (4) actionable under the rules governing liability for abnormally dangerous conditions or activities. *Copart Indus. v. Consolidated Edison Co. of N.Y., Inc.*, 41 N.Y.2d 564, 571 (1977); s*ee 69 Bloomingdale, LLC v. Coral Graphics, Inc.*, No. 20-CV-2613, 2021 WL 7830149, at *6 (E.D.N.Y. July 14, 2021).

Here, the well-pleaded allegations in the Complaint, accepted as true, establish defendant Dealer Direct's liability for private nuisance. AKP alleges that Dealer Direct caused Breen to enter AKP's property and use the Property for its own storage of vehicles, which was a substantial, intentional and unreasonable interference with AKP's right to use and enjoy its property, and led to the loss of revenue. The Court, therefore, concludes that AKP has properly alleged a private nuisance claim based on Dealer Direct's conduct.

###### E.    Trespass

"[A] trespass is an intentional physical entry onto the property of another without justification or permission." *69 Bloomingdale*, 2021 WL 7830149, at *6 (quoting *Corsello v. Verizon New York, Inc.*, 908 N.Y.S.2d 57, 69 (2d Dep't 2010), *aff'd as modified*, 18 N.Y.3d 777, 783 (2012); *see White Plains Hous. Auth. v. BP Prods. N. Am. Inc.*, 482 F. Supp. 3d 95, 122 (S.D.N.Y. 2020). "To prevail on a trespass claim under New York law, a plaintiff must show an interference with its right to possession of real property either by an unlawful act or a lawful act performed in an unlawful manner." *69 Bloomingdale*, 2021 WL 7830149, at *6 (quoting *In re*

11

*Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 725 F.3d 65, 119 (2d Cir. 2013)) (internal quotations, citations and alteration omitted).

The Complaint sufficiently alleges that Dealer Direct caused Breen to intrude upon the Property without AKP's permission. Accordingly, the Court concludes that AKP has established defendant Dealer Direct's liability for trespass, and, therefore, respectfully recommends granting AKP's motion for default judgment as to this claim.

### F.    Damages

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)). "Because the extent of the damages pleaded by a plaintiff is not deemed to be established by the default, the Court must conduct 'an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Trs. of Loc. 7 Tile Indus. Welfare Fund v. All Flooring Sols., LLC*, No. 19-CV-126, 2020 WL 9814088, at *3 (E.D.N.Y. Feb. 12, 2020) (quoting *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence. *See* Fed. R. Civ. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991).

Having found that the Complaint establishes Dealer Direct's liability for private nuisance and trespass, the Court now addresses the damages AKP is entitled to recover for those claims. Under New York law, "[t]he measure of damages for loss of use is the decrease in the property's rental value during the pendency of the injury." *Behar v. Friedman*, 119 N.Y.S.3d 222, 226 (2d Dep't 2020); *Volunteer Fire Ass'n of Tappan, Inc. v. Cnty. of Rockland*, 956 N.Y.S.2d 102, 106

12

(2d Dep't 2012).

In this case, AKP seeks a principal damage award of $2,880,000 for Dealer Direct's interference with AKP's right to use and enjoy the Property. *See* Rosatti Decl. ¶ 18; Supp. Rosatti Decl. ¶ 17. To substantiate its claim, AKP has provided invoices for storage fees paid by non-party Plaza Auto Mall, demonstrating that AKP has been paid approximately $125 per day, per car, for the Property. *See* Plaza Auto Mall Invoices, Dkt. 41-1 (invoices showing rental fees of $100-$175). AKP's representative further avers that AKP would have been able to store 100 cars each day on the area of the Property interfered with by Dealer Direct, and that Dealer Direct's trespass continued for approximately six months. Supp. Rosatti Decl. ¶¶ 7-10; Rosatti Decl. ¶ 13. Applying AKP's formula ($125 per day x 100 cars x 180 days), AKP is entitled damages of $2,250,000.00. *See* Supp. Rosatti Decl. ¶ 11; Rosatti Decl. ¶ 14.

In addition, AKP seeks $630,000 for its inability to rent an additional three acres of the Property to Amazon for seven months. *See* Supp. Rosatti Decl. ¶¶ 12-16; Rosatti Decl. ¶¶ 15, 17. After Dealer Direct's trespass ended, AKP amended its existing lease with Amazon to include three previously trespassed acres. Supp. Rosatti Decl. ¶¶ 14-15. AKP has submitted the lease amendment demonstrating that Amazon expanded the five acres it rented from AKP to eight acres. *See* Parking License First Amendment, Dkt. 41-2. Amazon agreed to pay AKP $240,000 per month for eight acres, or approximately $30,000 per acre, per month. *See id.* AKP states that it was unable to use the three acres for seven months due to Dealer Direct's conduct. Supp. Rosatti Decl. ¶ 13. Thus, AKP has established that it is owed $630,000 ($30,000 per month x 3 acres x 7 months).

In sum, AKP has demonstrated to a reasonable certainty that it is entitled to $2,880,000 against Dealer Direct.

**Conclusion**

For the foregoing reasons, the Court respectfully recommends granting the motion for default judgment filed on behalf of plaintiff Arthur Kill Properties, LLC against defendant Dealer Direct Services, Inc., and awarding Arthur Kill Properties, LLC a total of **$2,880,000** on its trespass and private nuisance claims.

Any objections to the recommendations made in this Report must be filed with the Honorable Nina R. Morrison within 14 days after the filing of this Report and Recommendation and, in any event, on or before **March 9, 2026**. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam) (discussing waiver under the former ten-day limit).

A copy of this Report and Recommendation is being electronically served on counsel. Further, the Court directs counsel for plaintiff Arthur Kill Properties, LLC to serve a copy of this Report and Recommendation by overnight mail and first-class mail on defendant Dealer Direct Services, Inc. and to file proof of service on ECF by **February 25, 2026**.

**SO ORDERED**

Dated: Brooklyn, New York
February 23, 2026

s/ James R. Cho
James R. Cho
United States Magistrate Judge

14